August 17, 2020

Hon. Paul W. Grimm
United States District Judge
6500 Cherrywood Lane, Suite 465A
Greenbelt, MD  20770

RE:  *American Academy of Pediatrics, et al. v. FDA*, No. 8:18-cv-883-PWG

Dear Judge Grimm:

Plaintiffs write in response to Defendants' letter dated August 5, 2020, ECF No. 188 ("Ltr. Mot."). Plaintiffs write in opposition to Defendants' request for clarification or relief from the Court's prior orders because (1) the proposed guidance is inconsistent with the remedial order, and (2) any relief from the remedial order to allow the planned deferral would be inconsistent with the Family Smoking Prevention and Tobacco Control Act ("Tobacco Control Act") and the Administrative Procedure Act ("APA").

Defendants' own account of FDA's planned guidance document establishes that the agency does not intend to engage in a "case-by-case" analysis of individual products or require "good cause." Rather, the proposed guidance represents another attempt by FDA to craft an extra-statutory exemption to Congress's mandatory premarket review requirements for what Defendants consider an entire "subclass" of tobacco products ("premium cigars").[1]

Far from an individualized assessment of "good cause," FDA plans to defer enforcement in all cases based on a company's self-certification that its product meets the new definition of "premium cigar" and that it will not engage in the already illegal conduct of marketing to minors. FDA does not propose to make any inquiry into the accuracy of these certifications. Nor does it propose to require any showing that the manufacturer is unable to meet the submission deadline, much less an explanation of why any obstacles it faces constitute good cause. Unsurprisingly, FDA "anticipates that many, if not all, manufacturers of premium cigars who submit the requested information will be able to show that deferral is appropriate." Ltr. Mot. at 3.

Moreover, once the self-certification is made, the deferral of enforcement is not for a period of time tied to individualized "good cause" established by a company, but rather for an indefinite period tied to FDA's completion of "a research effort" directed at the entire category of premium

---

[1] Contrary to the government's assertion that its definition of "premium cigar" is "consistent with the description in the January 2020 guidance . . . and similar to the definition in the proposed deeming rule," Ltr. Mot. at 2 n.2, the proposed guidance has significant differences from and significantly expands the class of products it describes as "premium" cigars. Most importantly, the definition in the referenced 2014 proposed deeming rule included a minimum price of $10 per cigar, 79 Fed. Reg. 23,142, 23,150 (Apr. 25, 2014), and the January 2020 guidance referred to "*relatively expensive*, large hand-rolled cigars that do not have flavors," ECF No. 174-1 at 31 (emphasis added). FDA's new definition includes cigars of any price, significantly expanding the definition of "premium cigar." This has significant public health consequences. Even with a $10 minimum, FDA had found that "premium cigars are used by youth and young adults." 81 Fed. Reg. 28,973, 29,020 (May 10, 2016). Given the price sensitivity of youth, there can be little doubt that the cigars subject to the proposed guidance are smoked by even more young people than "premium cigars" previously defined by FDA.

cigars and their health effects and patterns of use.  Ltr. Mot. at 2.  This confirms that FDA's proposal is not an individualized assessment of "good cause" for a particular manufacturer's failure to comply with the Tobacco Control Act, but a wholesale and indefinite suspension of that Act's requirements.  Notably, an Advanced Notice of Proposed Rulemaking on premium cigars has been pending for more than two years, yet no action is planned for the next year or more.[2]  FDA provides no reason to believe that the status of this effort has changed, or that its proposed guidance would be anything but an open-ended, long-term exemption.

The proposed guidance would even provide relief to manufacturers who illegally introduced products without marketing orders after the Deeming Rule's August 8, 2016 effective date.  *See* Ltr. Mot. at 2-3 ("Manufacturers may request deferral irrespective of whether a product was on the market as of the deeming rule's effective date.").  FDA has never before provided any compliance period for such products, and their manufacturers have known since the Deeming Rule was issued that they could not be lawfully marketed.  FDA does not even attempt to suggest that there could be "good cause" for exempting such products from the submission requirements, given that any such submissions are already years overdue.  Indeed, manufacturers would be free to introduce new premium cigar products into the market going forward without marketing orders as long as they make the required certifications.  This is transparently an exemption from the mandatory premarket review requirements for an entire category of tobacco products, not a case-by-case individualized assessment of "good cause" for enforcement deferral.

The Court should also deny Defendants' alternative request for relief from its remedial order in order to accommodate the planned guidance because the proposed guidance would violate both the Tobacco Control Act and the APA.  In its ruling vacating FDA's August 2017 Guidance, the Court held that, whereas "an agency may decide whether to exercise its enforcement discretion as to one or more discrete violations, in light of the circumstances surrounding a particular violation and considering other responsibilities and resources that the agency has at that time," such an individualized exercise of enforcement discretion "bears no relation to a decision to hold in abeyance enforcement of mandatory provisions of a statute that Congress viewed as integral to address public health dangers," which would be an abdication of FDA's statutory duties.  ECF No. 73 at 46.  Because FDA's planned guidance would hold enforcement of premarket review in abeyance for an entire category of tobacco products for an indefinite period, the guidance would be in excess of the agency's statutory authority; because it would suspend the Deeming Rule, it would require notice and an opportunity to comment.

FDA defends the planned guidance based on new qualms about its decision in the Deeming Rule to regulate premium cigars, stating that it plans a "research effort" to determine whether to revise the Deeming Rule.  Ltr. Mot. at 2.  This position is substantively indistinguishable from the one rejected in *Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017), where the D.C. Circuit vacated an agency's effort to suspend a rule without notice and comment while it considered whether to replace the rule.  As *Clean Air Council* shows, an agency's desire to reconsider a previously promulgated rule does not confer authority "not to enforce a lawfully issued final rule" through a wholesale suspension.  *Id.* at 9.  Rather, as DOJ itself acknowledged in *Cigar*

---

[2] *See* Office of Information & Regulatory Affairs, Unified Agenda, RIN 0910-AH88 (Spring 2020), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202004&RIN=0910-AH88 (including premium cigar matter on "Long-Term Actions" list, rather than list of actions expected to occur within next year).

*Association of America v. FDA*, "the default rule under the APA is that an agency considering a new course of rulemaking generally remains bound by the existing rule unless and until that rule is changed."  Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. at 34, *Cigar Ass'n of Am. v. FDA*, ECF No. 180-1, No. 16-1460 (D.D.C. Feb. 2, 2020) ("FDA's *CAA* Mem.") (citing *Clean Air Council*, 862 F.3d at 9).  This principle applies with even more force here, where there is an express *statutory* requirement that manufacturers submit substantial equivalence reports and obtain marketing orders prior to marketing.  *See* 21 U.S.C. §§ 387e(j), 387j(a)(2)(A).

Moreover, as the Court found with respect to the vacated August 2017 Guidance, the planned guidance "defeats, rather than furthers, the purpose of the Tobacco Control Act."  ECF No. 73 at 44.  As FDA reiterated just six months ago in *Cigar Association of America v. FDA*, "there is no public health justification for exempting premium cigars" from the Deeming Rule. FDA's *CAA* Mem. at 32 (quoting 81 Fed. Reg. at 29,020).  As FDA itself has long held, "(1) All cigars pose serious negative health risks, (2) the available evidence does not provide a basis for FDA to conclude that the patterns of premium cigar use sufficiently reduce the health risks to warrant exclusion, and (3) premium cigars are used by youth and young adults." *Id.* (quoting 83 Fed. Reg. 12,901, 12902 (Mar. 26, 2018).[3]  Reversing course despite admittedly lacking any "new data sufficient to address questions of whether the characteristics of premium cigars or their patterns of use may result in different health effects than other tobacco products," Ltr. Mot. at 2, runs directly counter to Congress's intent to require premarket review of tobacco products introduced after the Tobacco Control Act.  Indeed, FDA argued just six months ago that an indistinguishable proposal was "inconsistent with the statute." FDA's *CAA* Mem. at 35 (describing cigar industry proposal "that premium cigar manufacturers should be permitted to market a new product upon providing 'notice' that it meets the definition of a premium cigar").

For similar reasons, FDA's proposed guidance violates the APA's requirement that "when departing from precedents or practices, an agency must 'offer a reason to distinguish them or explain its apparent rejection of their approach.'"  *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 644 (D.C. Cir. 2020) (quoting *Sw. Airlines Co. v. FERC*, 926 F.3d 851, 856 (D.C. Cir. 2019)).  FDA justifies its proposed action not on the basis of new information, and not even on the difficulty of tobacco companies in complying with the law, but on a sudden abandonment of its previous "carefully consider[ed]" conclusion.  FDA's *CAA* Mem. at 32 (quotation omitted).

The long-delayed deadline for tobacco companies to submit substantial equivalence reports for deemed new tobacco products is less than a month away, and FDA has never changed its considered conclusions about the health hazards of premium cigars.  Its last-minute about-face cannot be reconciled with the purpose of the Tobacco Control Act, the requirements of the APA, or the Court's remedial order.  For these reasons, the Court should deny Defendants' motion for clarification of its remedial order and deny Defendants the relief they seek from that order.

---

[3] The Cigar Associations' claim that FDA "has determined that premium cigars do not have a youth usage problem," ECF No. 190 at 2, is pure fiction.  FDA's letter said that "youth smoke premium cigars *comparatively less* than most other deemed tobacco products," Ltr. Mot. at 1-2 (emphasis added), not that its findings of youth use were incorrect.

Respectfully submitted,

 */s/ Jeffrey B. Dubner*
Jeffrey B. Dubner
Sean A. Lev
Democracy Forward Foundation
1333 H Street NW, 11th Floor
Washington, DC 20005
jdubner@democracyforward.org
slev@democracyforward.org
Tel: (202) 448-9090

*Counsel for Plaintiffs*